DAVID A. BURNSIDE v. GRAND TRUNK RAILWAY COMPANY.

The statements of the general freight agent of a railway company as to the condition of goods delivered to him for transportation, made while the goods are in transit, or the duty of carriers still continues, are admissible in evidence against the company, although made eight months after the goods were so delivered to him.

If a party at the trial excepts to the admission of evidence of special damages upon the ground that they are not alleged in the declaration, and upon that ground alone he cannot afterwards, on a motion for a new trial, urge that such special damages could not be recovered, even if properly set out in the writ.

The obvious purpose of the pleader to allege special damages will not be controlled by the mere fact that he commenced the allegation as if it were a new count.

CASE against defendant as common carrier of goods and merchandise between Northumberland, N. H., and Milwaukee, Wis., alleging that, as such carrier, defendant was bound to convey goods entrusted to its care and received by it, without unnecessary delay, so that no damage might happen to the owner of such goods, in consequence of such unnecessary delay. Plaintiff alleges that he, on the first day of August, 1862, was the owner of two hundred bags, calculated and intended for carrying corn, and that he, on the same day, delivered the same to defendant at said Northumberland, to be carried from said Northumberland to said Milwaukee, and there to be delivered to Horton & Fowler, traders and agents of said plaintiff in said Milwaukee, who were to fill the same with corn and return the same to plaintiff by due course of freight. That defendant received said bags and undertook to carry and deliver the same as aforesaid.

Yet that defendant did not deliver the said bags to said Horton & Fowler until after the first day of November, 1862, which was an unnecessary, careless and wilful delay in the transportation and delivery of said bags, whereby the said plaintiff suffered damages in the sum of three hundred dollars. The plaintiff further sets forth, as cause of special damage, the fact that in consequence of said bags not being seasonably received by said Horton & Fowler, plaintiff was obliged to purchase barrels to transport said corn in, at said Milwaukee, and pay for the same much more than they were worth when received at said Northumberland; also, that the price of corn had risen twenty cents per bushel at said Milwaukee during said delay, so that he was obliged to pay and

did pay that amount per bushel more for said corn in November, 1862, than he would have been obliged to pay at the time when said bags should have been delivered there by defendant; and also, that during said time, the defendant had raised the price of freight upon its road, so that plaintiff was obliged to pay and did pay a much larger sum as freight upon his said corn in November, 1862, than he would have been obliged to have paid if said bags had been seasonably delivered to said Horton & Fowler as aforesaid.

Plaintiff's writ may be referred to as part of this case.

Plea, general issue.

Plaintiff testified that he delivered, about the first of August, 1862, two hundred bags to one Cummings, who had charge of the depot at Northumberland, and who was admitted to be the depot master and general freight agent of defendant company, at said Northumberland; that said bags were all encased in one package and properly directed to "Horton & Fowler, Milwaukee, Wisconsin;" that said Cummings was notified, when he received said bags, that they were sent out to be returned filled with corn; that said Cummings received the same and forwarded them from his depot on the way to said Milwaukee. But that in consequence of their not being received there, he waited until November, 1862, when he ordered his corn to be sent in barrels, which was accordingly done. And his testimony tended to show that, in consequence of the delay in delivering said bags at Milwaukee, he was obliged to pay more for barrels to transport his corn in than they were worth to him here; that he was obliged to pay a higher price per bushel for corn at Milwaukee, and a higher price for the freight on the same than he would have been obliged to have paid, had he bought said corn and had it forwarded to him at the time when such bags should have arrived at Milwaukee, by usual course of freight. To all this evidence as to damages, defendant objected on the ground that there was no allegation in the writ that would lay a foundation for any such damages. But the court admitted and defendant excepted.

Plaintiff testified that he heard nothing from his bags until April, 1863, when he applied to said Cummings, who still continued to be depot master and general freight agent at said Northumberland, for the defendant for some information in relation to them; that said Cummings informed him that he had ascertained that his bags were at Sarnia, in a freight depot of the defendant under a large lot of flour. To this statement of Cummings, defendant objected on the ground that his statements on that subject were not within the scope of his agency, and could not bind the company, and hence were incompetent. But the court admitted the testimony, and defendant excepted.

Defendant also objected that the defendant could not be made liable, as no knowledge was brought to the company, when the bags were left there, that they were intended to be filled with corn. That the remark to the station agent when the bags were left, that they were left to be filled with corn was not sufficient. But the court overruled the objection and defendant excepted.

The court charged the jury that plaintiff could recover his actual dam-

age caused by a failure on part of defendant to carry and deliver said bags in ordinary and proper time for such transportation, notwithstanding he did not pay the freight on the bags in advance, if the company received them and undertook to carry them with the understanding that all freight was to be paid on their return, to which defendant excepted. Verdict for plaintiff for $100, and motion to set the same aside. Defendant also moved in arrest of judgment on the ground that plaintiff's declaration is insufficient.

*Fletcher & Heywood*, for the defendant.

1. In this case, in order to prove that the bags were not carried agreeably to the undertaking of the defendant company, the plaintiff was allowed to prove that he inquired of Cummings, the station agent, as to where they were, and that Cummings informed him that he had ascertained that the bags were at Sarnia, in a freight depot, under a large lot of flour. That this information was given to the plaintiff in April, 1863.

This was a statement by Cummings long after the property had passed from his control.

It would also seem to appear to have been a matter about which Cummings had no knowledge, and that he ascertained about the bags from somebody else.

This was an unauthorized statement which cannot be used as an admission against the defendants. 1 Greenl. Ev. secs. 113, 114; Story on Agency, 134 to 139; *Robinson* v. *Worcester Railroad*, 7 Gray 92; *Burgess* v. *Wareham*, 7 Gray 345; *Demerrit* v. *Meserve*, 39 N. H. 521; *Woods* v. *Banks*, 14 N. H. 101.

2. The three last counts in the declaration are too defective to sustain a judgment. They do not set forth the claim in any intelligible manner in themselves, nor by reference to the first count. The evidence to prove the special damages was all admitted upon these defective counts, as the special damage is not set forth or alleged in the first count, and the verdict of $100 was found upon this evidence. The judgment should, therefore, be arrested, as the verdict was general. *Blanchard* v. *Fisk*, 2 N. H. 398; *Sawyer* v. *Whittier*, 2 N. H. 315; Gould's Pl. ch. 10, sec. 58, and authorities there cited; *Dryden* v. *Dryden*, 9 Pick. 546.

*Benton & Benton*, for plaintiff.

I. Declarations of agents within the scope of their authority, and accompanying the acts they are authorized to do, bind the principal. Angell & Ames on Corp. sec. 309. The case finds that Cummings was the general freight agent of the defendants. He was, then, the proper person to transact all business with regard to freight at that point on the defendant's road. And it is respectfully submitted that making inquiries and search for lost or missing freight received at or forwarded to that station, would come properly within the scope of such business; and

that his declarations to the owner of the freight made in connection with, and relative to, such a search, would be fully within the scope of his authority, and accompanying the act he was authorized to do. *Meserve* v. *Conn. R. Railroad*, 6 Gray 450 ; 1 Greenl. Ev. sec. 114, a., Redfield's Ed.

II.   The motion in arrest of judgment stands upon the alleged insufficiency of the plaintiff's declaration, and can only be sustained by such a substantial defect as would have sustained a general demurrer. No matter of form is sufficient.   Gould's Pl. ch. 10, sec. 11.

The declaration, though not skillfully and formally drawn, is still substantially sufficient, and contains, in reality, but one complete statement of the plaintiff's cause of action, i. e., of the circumstances which constitute it ; or, in other words, but one *count*.   Gould's Pl. ch. 4, secs. 2 and 3.

The last three sections of the declaration do not even attempt to state a new cause of action, or to make a new or different statement of the cause set forth in the first section, but simply explain and qualify the general allegation in the first ; and it is submitted that the fact that these sections are, in form, somewhat similar to new counts, will not change the character of the declaration, for the court will look rather to the substance, than to the form of the pleading.   Gould's Pl. ch. 10, sec. 8.

BELLOWS, J.   The first question is, whether the statement of Cummings, the defendants' general freight agent, was rightly admitted in evidence.   On this point, the plaintiff's testimony was, that he delivered the bags to him at Northumberland, about the first of August, 1862, to be carried to Milwaukee, and that not having been heard from, in April, 1863, he applied to Cummings, who still continued to be such agent, for information about them, and was told by him that he had ascertained that they were at Sarnia, at a freight depot, under a large lot of flour.

In the solution of this question, the only difficulty arises from the fact, that this statement was made after the lapse of about eight months from the time the bags were received by defendant.   Had the statement been made at the expiration of a reasonable time for the delivery of the bags at Milwaukee, and the transmission of the intelligence to plaintiff of their non-delivery, it would have been admissible in evidence as being within the scope of Cummings' agency, and while it continued in relation to this very transaction, *dum fervet opus.*

In *Morse* v. *The Connecticut River Railroad Co.*, 6 Gray 450, it was decided that the statements of the conductor, or baggage master and station master, in relation to the loss of a trunk on a railroad, made to the owner upon inquiries by him on the morning after the loss, were admissible, upon the ground that such statements were made by them, as agents of the defendants, within the scope of their agency, and while it continued.   The verdict was set aside for error in excluding this evidence.

In *Burgess* v. *Wareham*, 7 Gray 345, it was decided that the declarations of a highway surveyor in relation to work done upon a high-

way, under a contract made with him, such declarations being made several months after the work was finished, were not admissible. The doctrine of that case was, that the statements of an agent in negotiating a contract and carrying it into execution, are regarded as part of the *res gestae*, and admissible in evidence, but that after such contract has been executed, his statements are merely hearsay, and like those of any other person, and cannot affect his principal.

This is the doctrine of *Demerrit* v. *Meserve*, 39 N. H. 521, which holds, that, to make the declarations of an agent admissible, they must be within the scope of his authority, and made while the transaction is depending. Such is the doctrine laid down in 1 Greenl. Ev. sec. 113, and cases cited; and Story on Agency, sec. 137, and notes; and *Fairlee* v. *Hastings*, 10 Sumner's Vesey 123, and notes.

In the case before us, the transaction was still depending, the goods were still in transit, and it was still within the scope of Cummings' authority to find and forward them. Had the plaintiff, before this, in any way, put an end to the defendants' duty to transport any farther those bags, or to deliver them to him, the case might have been different, perhaps, but nothing of that kind is stated; and, for aught that appears, the original undertaking by the defendants to carry the bags to Milwaukee still subsisted, and the agency of Cummings still continued in respect to it. So long as the duty of the defendants to transport the goods continued, the authority of the agent would continue, and so long his declarations in respect to it would be regarded as the declarations of the principal.

There are authorities which hold that the declarations of a general agent—and Cummings must be regarded as such—made at any time during his agency, are admissible against his principal, 2 Cowan's Phillips Ev. 187, and such seems to have been the view of *Tindall, C. J.*, in *Garth* v. *Howard & al.*, 8 Bingh. 451. But, however this may be, we think it well settled that the declarations of the agent while in the execution of an act within the scope of his authority are admissible against the principal. In *Mott & al.* v. *Kip*, 10 Johns. 478, it was decided that the declarations of a deputy sheriff to plaintiff's attorney, made in answer to inquiries relative to an execution in such deputy's hands, and while it was in force, were admissible, and the court put it upon the ground that the statements were made in the count of the transaction, and were to be considered as part of the act touching the execution of the writ.

The only question in the case before us, is, whether, at the time these statements were made, the contract with the railroad was still in the course of execution, and for the reasons before suggested, we think it must be so considered.

It is true, that, in November, previous to the time when the plaintiff applied to Cummings, which was in April, 1863, he had purchased barrels to transport his corn in, but there was no evidence that he had given directions to defendants not to transport the bags to Milwaukee; and in the absence of such evidence, it would be understood that the original contract to deliver the bags to Horton & Fowler, the plaintiff's agents,

was still in force.   Besides, it is quite clear that the duty of the railroad to find these bags and deliver them to the plaintiff at some place, still existed, and that being the case, the agency of Cummings still continued.

The exception that the special damages claimed are not specially alleged in the declaration, appears not to be true in point of fact.   It is true the declaration is informal, the statement of each item of special damage commencing as if it were a new count; but it is manifest that it was the purpose of the pleader to set them out as special damages, all constituting but one count.   These allegations all assume that the cause of action is stated in the preceding part of the declaration, and do not undertake to set out the cause of action.   Indeed, there is nothing to give these statements the character of separate counts but the commencement, and we do not think this ought to control the otherwise obvious purpose of the pleader.

As there was no other exception to the proof of special damages, it is too late now to urge that it ought not to have been considered by the jury.

The exception to that evidence was specific, that no such damages were alleged ; and as that turns out to be unfounded, the evidence stands as if received without objection.   The only inquiry, then, is, whether there was any error in the instructions to the jury of which the defendants can avail themselves.   If there is any objection, it can only be that the court did not direct the jury that these special damages, or some of them, could not be included ; but the answer to that is, that no such instructions were asked for, and what were given were correct.

The truth is, that, by confining their objections to this evidence to the want of the necessary allegations in the declarations, the defendants waived all others, and as those allegations were, in fact, made, this testimony must be treated as received without objection.   If, then, the defendants wished for instructions on this point, it was their duty to ask for them ; and it is to be presumed the right instructions would have been given.   As this was not done, it must be understood that the defendants acquiesced in the plaintiff's claim to include these items, if properly alleged in the writ, and the absence of instructions on that point is no cause for disturbing the verdict.

If, by a general exception to the charge of the judge, a party might take advantage of any omission, to notice and give proper instructions upon all and every matter appearing in the cause, it would obviously encourage a practice that would cause great embarrassments to courts of justice, and one which finds no countenance in the adjudged cases.   In our own State, it is decided that if instruction is desired upon any particular point, the party must ask for it, and cannot lie by and take his chance of a verdict, and then take exception.   *Moore* v. *Ross*, 11 N. H. 557, and cases ; and so is *State* v. *Haskell*, 6 N. H. 359 ; the same views are recognized in *Armstrong* v. *Taber*, 11 Wheat. 277.   In *Wait* v. *Maxwell*, 5 Pick. 219, it was held that a verdict should not be disturbed because improper evidence was admitted, and even commented upon by the judge, if no objections were made at the trial, or

different instructions asked for; the court holding that it must be considered that all objections are waived.

So in New York, in an action against a master for the negligence of his servant, it was held, on a motion for a new trial, that it could not be urged that the evidence did not establish the relation of master and servant, if the objection was not made at the trial. *Ford* v. *Monroe*, 20 Wend. 210. These decisions, we think, conform to the course of the practice in this State. *Jackson* v. *Barron*, 37 N. H. 494, and cases cited; and *Essex Bank* v. *Rix*, 10 N. H. 201, and see cases; *Bank* v. *Keene*, 45 Me. 103.

*Judgment on the verdict.*